DowNey, Judge,
dissenting:
After a very careful consideration of this case in an attempt to reconcile my views with those stated I find that I can not do so without too great violence to my own convictions. I am persuaded that it was the intention of the parties, and within a proper construction of the supplemental contract, that the contractors should be paid only for the 427 feet of cofferdam constructed across the towhead and not for the other cofferdam required to be left in the completed work.
Under the original contract cofferdam, if necessary, was to be built by the contractor at his own expense, its cost to be included in the prices bid on other parts of the work. By the next section of the specifications, made a part of the contract, the contractor was required to remove the cofferdam at his own expense. It is not necessary that I should discuss the question as to the necessity for the use of a eoffer-dam in the construction of the work, since the findings very properly state that “ a cofferdam was necessary for the completion of the work prescribed by the original and supplemental contracts.” It follows, therefore, that the original *415 contract in effect required the contractor to build the necessary cofferdam at his own expense, including his compensation therefor in his prices bid on other parts of the work, and required him to remove it at his own expense.
It is quite apparent that the required removal of the cofferdam was a burden on the contractor rather than a benefit. The character of its construction, if nothing else, would indicate this. That there would be large quantities of waste material to be disposed of in connection with its removal is apparent from the character of its construction and is also indicated in the specifications. The salvage in materials must, of necessity, have been small and no doubt less than the cost of removal. Mr. Sheridan, in his testimony, attempts to show that materials composing the cofferdam would have been of value over and above the cost of removal, but a careful examination of his testimony in this respect must lead to the conclusion that it is entitled to but little, if any, weight, and he finally, contrary to this contention, specifically admits upon cross-examination that it would have been a hardship to be compelled to remove it. The findings correctly state that “ the contractor never removed any of the longitudinal cofferdam,” and this fact must be taken in connection with the further fact that there were portions of the cofferdam which they were not required by the supplemental contract to leave in place and which they might have removed had they seen fit. The findings also show that prior to the execution of the supplemental contract it had been agreed between the parties that the contractor might allow the cofferdam to remain. After that agreement and before the execution of the supplemental contract the contractors had for their own purposes dumped waste rock from the excavation against the cofferdam, rendering its removal practically impossible. What has been said indicates the conditions existent with reference to the cofferdam under the original contract and up to the time of the execution of the supplemental contract, and if the plaintiff is to recover in this action it must be because the supplemental contract changed the whole situation with reference to cofferdam necessarily to be built by the contractors for their own pur *416 poses in connection with the construction of the work and at their, own expense.
The supplemental contract recites “that with the object of securing the construction of about 1,500 feet additional concrete river wall downstream to the lock by the substitution of a rock-fill dam with rubble masonry toe for about 5,500 feet of the upper end of said wall, the following changes shall be made in the agreement entered into by said parties of the first and second parts on the third day of May, 1903, * * * all the other terms and conditions of which agreement remain unchanged.” Paragraph 1 then prescribes the river wall at the upper end to be omitted, to the approximate length of 5,500 feet, with a reduction in the amount of concrete of approximately 12,000 cubic yards. Paragraph 2 provides for the extension of the concrete river wall downstream. Paragraph 3 prescribes the method of construction of the toe wall along the line of the omitted concrete wall, and paragraph 4 prescribes the method of construction of the rock dam where the concrete wall is omitted.
At that time a part of the longitudinal cofferdam along the portion of the work where, under the original contract, the 5,500 feet of concrete wall was to be built had already been constructed under the provisions of the oi’iginal contract and for the contractor’s own purposes, and, as stated above, the contractors had dumped waste rock against a part of it, indicating even then not only that it was the intention to leave it, but that it was to the advantage of the contractors to be permitted to do so; and this rock thus dumped finally became a part of the rock dam or dump substituted for the concrete river wall under the modified plan and its then existence is recognized by and is the explanation of the requirement in paragraph 4 of the notice to contractors for “the more careful construction of the dump of waste rock.” The portion of the cofferdam already constructed was, by the supplemental contract, not simply permitted to remain in place at the option of the contractor as had already been done, but was required to be left in place in the completed work and this cofferdam built before the execution of the supplemental contract and against which waste rock had been *417 dumped and that built after the execution of the supplemental contract, all built primarily for the same purpose, a necessary means to the construction of the other work, thereafter entered alike into the modified construction, although no claim is made for the cofferdam already constructed when the supplemental contract was made. Paragraph 5 of the supplemental contract provided that “ the longitudinal cofferdam, where the concrete river wall is omitted, will be left in place.” This paragraph also provided for the construction of a cofferdam of approximately 400 feet in length and of similar style, size, and strength to the cofferdam already in place across the towhead, where it had not theretofore been contemplated that any cofferdam would be required, since the towhead itself acted as a cofferdam.
Paragraph 6 provided “ that as full compensation for making said changes and supplying all the materials and labor necessary for doing said work, the said Sheridan-Kirk Contract Company shall be paid the following prices:
“ Rock excavation, after December 1, 1903, where the maternal excavated is used as described in paragraphs 1, 3, and 4, to form a rock fill dam with rubble masonry toe, to replace the concrete wall, two dollars and thirty-three cents ($2.33) per cubic yard.
“ Cofferdam, two dollars and fifty cents ($2.50) per lineal foot.
“All other rock excavation and additional earth excavation and concrete will be paid for at the unit prices specified in the original contract.”
It should be noted that outside of the question of payment for longitudinal cofferdam, other than that required to be built across the towhead, these provisions of the supplemental contract afforded compensation to the contractors for any loss of profits accruing to them by reason of the lessening of the amount of concrete river wall to be built and for any other expense properly to be incurred by them in connection with the prosecution of the work under the supplemental contract in lieu of that provided for in the original contract. One of these provisions gave to the contractors $2.33 per cubic yard for rock excavation as against a price of $1.98 ■provided for in the original contract, by virtue of which in *418 crease in price the contractors were paid $45,960.95. This paragraph of the supplemental contract also permitted the contractors to use crusher dust instead of sand in all concrete and mortar, a concession which, under the conditions existing at this locality, was of value to the contractors. These provisions of the supplemental contract also provided payment to the contractors, at least, for the construction of the cofferdam across the towhead at the rate of $2.50 per lineal foot. The question is whether it provided that the contractors should be paid $2.50 per foot for the other longitudinal cofferdam necessary for their own purposes under both the original and supplemental contracts.
It is to be borne in mind that the supplemental contract did not supersede the original contract, but that it simply modified it, leaving all the other terms and conditions of the original contract unchanged, and it follows, necessarily, that the contract for consideration in determining the question is not alone the supplemental contract, but it is both contracts construed together.
It is found, as a fact, and is unquestionably true, that the construction of a cofferdam was necessary for the completion of the work prescribed by the supplemental contract as well as that to be done under the original contract. To hold that under the two contracts, construed together, the United States agreed to pay the contractors $2.50 per foot for longitudinal cofferdam necessarily to be constructed by them for their own purposes, is to hold that the United States deliberately abandoned the provision of the original contract expressly requiring the contractor to construct such cofferdam at his own expense and assumed, with no apparent reason therefor, the burden of paying $2.50 per foot for that cofferdam. There is no doubt about the fact that a cofferdam was required for the construction of one class of work just as it was required for the construction of the other class of work, and there is no possibility of doubt about the fact that when this supplemental contract was made it was made in the light of knowledge upon the part of both parties that the contractor was required, for his own purposes, to build this cofferdam as a necessary prerequisite to *419 the construction of the work itself and to build it at his own. expense. There was a reason for the provision in the contract with reference to the payment of $2.50 per foot for cofferdam. That reason is found in the fact that the conditions were changed by the supplemental contract to the extent that the contractor was required to build the cofferdam across the towhead where theretofore he had not been required to build it and where the construction of the work as originally provided for did not require that he should have a cofferdam.
The supplemental contract changed the conditions with reference to the removal of the cofferdam after the completion of the work, and required that the cofferdam should be left in place. It is false logic to argue that because the supplemental contract required the contractors to leave the longitudinal cofferdam in the completed work, the supplemental contract therefore required the contractors to build the cofferdam, and inferentially provided for payment therefor. The requirement as to the building of the longitudinal cofferdam, otherwise than that across the towhead, is found not in the supplemental contract, but in the necessities of the work itself. That necessity existed under the original contract and it continued to exist under the supplemental contract as a necessary adjunct to the construction of both classes of work, and it is the necessities of the case, recognized at the time by both parties, which required the construction of this longitudinal cofferdam and not the supplemental contract.
The removal of the cofferdam after the completion of the work, I submit, was a burden upon the contractor and not a privilege. The specifications themselves, in the terms used, indicate that it was a requirement as against the contractor and not a privilege extended to him, and common knowledge, with reference to such construction as that described in the record in this case, is thoroughly satisfying upon the proposition that when there was provision in the supplemental contract for the leaving of the cofferdam in place instead of its removal it was a provision which relieved the contractors from an otherwise imposed burden. A “ hardship,” Mr. Sheridan says he would have regarded it.
*420 The findings state, with reference to this cofferdam required to be left in the work, that “it formed a component part of the ultimate structure as modified by the supplemental contract of December 14, 1903, and was essential to the plan of the work as modified by the supplemental contract.” If this finding means simply that the cofferdam was an essential part of the work according to the particular plan adopted for the construction of the rock dump or dam, it is correct, since, according to this plan, the cofferdam remained in and became a part of it; but it was not essential in the sense that a rock dam or dump could not be built without it except to the extent that the contractors could not do the excavating and build the toe wall without a cofferdam to keep the water out. A rock dump or dam could of itself be built without a cofferdam in it. It was advantageous and of benefit to the work, as provided for by the supplemental contract, that the cofferdam should remain in the completed work. It gave it additional strength and stability and, in a sense, when left therein, it became a component part thereof, but it was not a necessary or an absolutely essential part of that work, except in the sense stated. But however beneficial to the work, and therefore to the United States, this cofferdam left in the work became, I submit that that can in nowise be determinative of the question. The United States can not be required to pay for the cofferdam left in the work because it was beneficial to the work, and hence of value to the United States. If it is to pay for it, it must be paid for because the contract contemplated that it should be paid for. That, I am quite sure, was not within the intention of the parties at the time the contract was made, and is not within the reasonable construction of the two contracts taken together.'
The question of a timely demand for payment for the cofferdam in question bears upon the construction the parties themselves put on the supplemental contract at the time. The contract provided, as is usual in such cases, for payment on monthly estimates of the amount of work done with the usual percentage retained. The findings show that request for an estimate was made of the engineer in charge in 1906. and that a letter was written in February, 1907, by the *421 plaintiff’s secretary stating that in going over the plaintiff’s contracts he had recently found a supplemental contract, and claiming that it provided for payment at $2.50 per foot for the cofferdam “ that is built where the concrete river wall is omitted ” and requesting an estimate. I am of the opinion from the whole record in this case, the phraseology of this letter in particular, and Mr. Sheridan’s testimony as to the time he first made a request for an estimate fixed by the proper date of another circumstance, that no demand was made before the letter referred to and that the claiming of compensation for the cofferdam in question was an afterthought, but there is room for difference of opinion as to when the first demand was made, and I accept the finding in this respect for purposes of argument, and in its light must still entertain the opinion that the demand, whenever made, was an afterthought.
The finding shows that in reply to the demand by letter the engineer officer in charge stated that the provision for payment for cofferdam at $2.50 per foot applied only to the additional cofferdam referred to in the supplemental contract, and that they had been paid for that in the estimate for January, 1904, a fact not disputed. The supplemental contract was signed December 14, 1903, and approved December 30, 1903. The 427 feet of cofferdam across the towhead, including necessary preliminary excavation, must have been built in January, 1904. Assuming that the demand made in 1906 was in the middle of the year, two years and a half elapsed before there was any demand for payment for any of the other cofferdam. The findings show that the cofferdam in question was built in 1904, 1905, and 1906, and that a considerable portion of the rock dam or dump in which the cofferdam in question was left was completed several months before any demand was made for payment for cofferdam. The nature of the work, the necessity for cofferdam in the prosecution of the work, the continued progress of the work, even though slow, would certainly justify the conclusion that much cofferdam was built long before 1906.
The contractors did not have to wait until they had completed the rock dam or any part of it before claiming pay *422 ment for tlie cofferdam if they were entitled to it. Tbe rock dam consisted of cofferdam, excavated rock, and toe wall. They were paid for tbe rock, not in and as a part of tbe dam, but as rock excavation at the increased price which compensated them, among other things, for putting it in the dump “ more carefully.” The toe wall was paid for as concrete at the contract price per yard. The cofferdam must be built before excavating could be done or the tow wall built. The cofferdam, if to be paid for, was to be estimated for, under the contract, each month as built, and the fact that no demand for such an estimate was made for two years or more, or even for “ several months ” after the completion of a- part of the rock dam can indicate only that the contractors did not then consider that they were entitled to any payment therefor and justifies the conclusion that demand for payment was an afterthought.
As further throwing some light upon the question, although possibly not of great importance, it is noted that in the letter written by Capt. Barden to the plaintiff company, with reference to the contemplated changes in the plans for this work, and soliciting proposal with reference thereto, the engineer officer indicates that he would like to have “ a proposition from you as to the unit prices at which you would be willing to make these changes.” After specifying the changes to be made, he says, “The longitudinal cofferdams, except that portion upstream of the upper end of the canal wall, to be left in place, instead of being removed as provided for in par. 1¡.6 of the specifications." Further on he states, “All the earth excavation required under (5) will be paid for at the present price of 50 cents per cubic yard ” (5) provided for the excavation of the towhead. Further, he says, “As there are only three classifications under the existing contract, namely, earth excavation, rock excavation, and concrete, and as the extra earth excavation will be taken up at the present price, it will therefore be necessary to alter only the price of rock excavation.” He concludes by saying, “ Your proposal should cover, then, an agreement to make the changes specified above at a certain increased price for rock excavation if (3) (rubble toe) be used, and another *423 price for rock excavation if (4) (concrete toe) be placed; also a price per lineal foot for the cofferdam ”; and in connection with the proposal as to the cofferdam, but anterior to the last above quotation, it is said, “ The cost of building and filling the coffer should be included in the price bid per lineal foot of coffer.” These quotations indicate quite clearly, it seems to me, the respects in which changes as to the contractors’ compensation were contemplated, and to my mind it is somewhat significant that, in connection with a request for a price per lineal foot for cofferdam, which it seems to me under all the circumstances was meant to apply to the theretofore uncontemplated cofferdam now to be built across the towhead, he is informed that the cost of building and filling the coffer should be included in the price bid per lineal foot. The word “filling,” as used, could not with propriety refer to anything else than the cofferdam to be built across the towhead, which was not contemplated by the original contract. The cofferdam to be built under the original contract, and also under the supplemental contract, for the contractors’ own purposes and as a necessary prerequisite to the construction of the work, had to be filled before it became a cofferdam. The mere outside framework could serve no purpose alone and the filling was an essential and a component part of the cofferdam itself. There could have been, then, no propriety whatever in specifying that the contractor should fill a cofferdam which he was required to build for his own purposes and which without filling could serve no good purpose whatever. But since the cofferdam across the towhead was to be built under the provisions of the supplemental contract, and as an addition to the obligations imposed upon the contractor under the original contract, it was perfectly proper, in order that there should be no misunderstanding as to what the contractors were to do with reference thereto, that they should be notified that their bid with reference to that cofferdam should include the filling. There is one other circumstance in this connection. The clause referred to with reference to the filling of the cofferdam is disassociated from the clause directing that the bid be “ a price per lineal foot for cofferdam,” but it is asso *424 ciated with and immediately follows the statement with reference to “ earth excavation required under (5),” which was clearly the excavation of the towhead' between the ends of the cofferdam, and the cofferdam which was required to be “ of similar size, style, and strength ” was undoubtedly the cofferdam to be built across the towhead. All the stipulations contained in this'letter of the engineer officer which were appropriate were carried into the supplemental contract in many instances in the same language used in the letter, and when the contract provided that the contractors should be paid certain prices, they were to be so paid “ as full compensation for making said changes and supplying all the materials and labor necessary for doing said work.” So far as the construction of cofferdam was concerned, there was no change in the requirements of the contract except as to the cofferdam to be constructed across the towhead. There was a change as to the final disposition of the other longitudinal cofferdam, but the requirement as to its construction remained upon the same basis as provided in the original contract.
It is conceded that the contractors were paid the contract price for the 427 feet of cofferdam constructed across the towhead and, in my judgment, they are not entitled to further compensation on account of cofferdam.